**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **KOUICHI NAKAMURA,** | ) | |
| | ) | |
| **Plaintiff *pro se*,** | ) | |
| | ) | |
| v. | ) | **Civil No. 08-0354 (CKK)** |
| | ) | |
| | ) | |
| **MICHAEL V. HAYDEN, Director,** | ) | |
| **Central Intelligence Agency,** | ) | |
| | ) | |
| **Defendant**. | ) | |
| | ) | |

**DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVELY,
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendant, Michael V. Hayden, by and through undersigned counsel, respectfully moves

the Court, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.

R. Civ. P."), to dismiss Plaintiff's complaint on the bases that this Court lacks subject matter

jurisdiction and Plaintiff has failed to state claim upon which relief can be granted.

Alternatively, Defendant respectfully moves, pursuant to Fed. R. Civ. P. 56, for summary

judgment on the grounds that no genuine issue of material fact exists and, therefore, Defendant is

entitled to judgment as a matter of law.  In support of these motions, Defendant respectfully

refers the Court to the attached Memorandum of Points and Authorities in Support, Statement of

Material Facts To Which There Is No Genuine Issue, and Declaration of Ralph S. Dimaio,

Information Review Officer for the National Clandestine Service of the Central Intelligence

Agency.  Defendant's Attachment A.

*Pro se* Plaintiff will please take note that the assertions contained in the accompanying

declaration and other attachments in support of Defendant's motion will be accepted by the Court

as true unless Plaintiff submits his own affidavit or other documentary evidence contradicting the

assertions in Defendant's declaration and attachments.  *See Neal v. Kelly*, 963 F.2d 453, 456

(D.C. Cir. 1992); Fed. R. Civ. P. 56(e); and Local Civil Rule 7(h).

Because this is a dispositive motion, Defendant has not sought Plaintiff's consent before

filing this motion.  *See* LCvR 7(m).

Respectfully submitted,

                /s/
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

                /s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

                /s/
JUDITH A. KIDWELL
Assistant United States Attorney
555 4th Street, N.W.-Civil Division
Washington, D.C.  20530
(202) 514-7250

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **KOUICHI NAKAMURA,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** *pro se* | ) | |
| | ) | |
| **v.** | ) | **Civil No. 08-0354 (CKK)** |
| | ) | |
| | ) | |
| **MICHAEL V. HAYDEN, Director,** | ) | |
| **Central Intelligence Agency,** | ) | |
| | ) | |
| **Defendant**. | ) | |
| | ) | |

**STATEMENT OF MATERIAL FACTS TO WHICH**
**THERE IS NO GENUINE ISSUE**

Defendant respectfully submits this statement of material facts as to which there is no genuine issue in accordance with this Court's Local Rule 7(h).  The Declaration of Ralph S. Dimaio ("Dimaio Decl."), Information Review Officer for the National Clandestine Service of the Central Intelligence Agency ("CIA"), supports this statement.  *See* Defendant's Attachment A.

1.    Plaintiff, Kouichi Nakamura, a foreign national, submitted a written Freedom of Information Act ("FOIA") and Privacy Act ("PA") request to the CIA dated January 8, 2007. Dimaio Decl. ¶¶ 5, 18, FN 2, Exhibit A.  Plaintiff's request sought information or records relating to himself, and information relating to the terrorism special measures law and the U.S. Japan Security Treaty.  *Id*.

2.    By letter dated January 17, 2007, the CIA provided Plaintiff with a final response to his request.  Dimaio Decl. ¶ 6, Exhibit B.  The CIA referred Plaintiff to the Department of

State for information regarding the terrorism special measures law and the U.S. Japan Security Treaty. *Id*. For that portion of his request pertaining to records on himself, the CIA informed Plaintiff that pursuant to section 3.6(a) of Executive Order 12958, as amended, "the CIA can neither confirm nor deny the existence or nonexistence of records responsive to your request." *Id*. Accordingly, the CIA denied Plaintiff's request pursuant to FOIA Exemptions 1 and 3, 5 U.S.C. §§ 552(b)(1) and (b)(3). *Id*. The CIA also informed Plaintiff that he had a right to appeal the finding to the Agency Release Panel. *Id*.

3.    By letter dated March 23, 2007, Plaintiff appealed the CIA decision on his FOIA request regarding records on himself. Dimaio Decl. ¶ 7, Exhibit C.

4.    By letter dated March 28, 2007, the CIA advised Plaintiff that his appeal rights had expired on March 3, 2007, and, therefore, the CIA could not accept his appeal. Dimaio Decl. ¶ 8, Exhibit D.

5.    By letter dated April 6, 2007, Plaintiff submitted another FOIA and PA request that asked for the identical information as the earlier request. Dimaio Decl. ¶ 9, Exhibit E.

6.    By letter dated April 12, 2007, the CIA provided Plaintiff with a final response to his request stating that it had already provided him a response to that request by letter dated January 17, 2007 and provided him with another copy of that response. Dimaio Decl. ¶ 10, Exhibit F.

7.    By letter dated April 18, 2007, Plaintiff submitted to the CIA the same FOIA and Privacy Act request for the third time. Dimaio Decl. ¶ 11, Exhibit G.

8.    By letter dated May 9, 2007, the CIA advised Plaintiff that it had already provided

2

him with a response to his request and that it did not intend to correspond with him further on the matter.  Dimaio Decl. ¶ 12, Exhibit H.

9.      By letter dated December 7, 2007, Plaintiff exercised his right to appeal CIA's final response.  Dimaio Decl. ¶ 13, Exhibit I.

10.      By letter dated December 12, 2007, the CIA advised the Plaintiff that his appeal rights had expired on March 3, 2007.  Therefore, it could not accept his appeal.  Dimaio Decl. ¶ 14, Exhibit J.

11.      On February 27, 2008, Plaintiff filed a complaint in this Court.  *See* Docket No. 1.

12.      By Memorandum opinion and order dated February 27, 2008, the Court dismissed all allegations in Plaintiff's complaint, except for those "liberally construed" by the Court as FOIA claims.  *See* Docket No. 3.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

_____/s/_____
JUDITH A. KIDWELL
Assistant United States Attorney
555 4th Street, N.W.-Civil Division
Washington, D.C.  20530
(202) 514-7250

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **KOUICHI NAKAMURA,** | ) | |
| | ) | |
| **Plaintiff *pro se*,** | ) | |
| | ) | |
| v. | ) | **Civil No. 08-0354 (CKK)** |
| | ) | |
| | ) | |
| **MICHAEL V. HAYDEN, Director,** | ) | |
| **Central Intelligence Agency,** | ) | |
| | ) | |
| **Defendant**. | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVELY,
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**<u>Preliminary Statement</u>**

Plaintiff, a foreign national, brings this action under the Freedom of Information Act
("FOIA"), 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552(a), naming Michael V. Hayden,
Director of the Central Intelligence Agency ("CIA"), as Defendant. Plaintiff alleges that the CIA
improperly withheld agency records to which he is legally entitled in response to his FOIA
request for records pertaining to himself. Defendant Michael V. Hayden is not a proper party to
be sued under FOIA and, for that reason, the Court lacks subject matter jurisdiction over
Plaintiff's complaint. *See Santini v. Taylor*, 2008 WL 2190936 (D.D.C. May 27, 2008)
(dismissing complaint with prejudice for lack of subject jurisdiction because the FOIA does not
grant courts jurisdiction over individual agency employees, even where such employees are
acting in their official capacities).

Moreover, as discussed below, Plaintiff failed to exhaust his administrative remedies. Accordingly, Plaintiff's complaint should be dismissed.

In any event, the CIA has not improperly withheld agency records from Plaintiff. The CIA responded to his request in a timely manner stating that it could neither confirm nor deny the existence of any such records. Whether or not records exist which are responsive to Plaintiff's FOIA request is a fact which is itself properly classified. *See* Dimaio Decl. ¶¶ 16, 18.

Executive Order 12958 (the "Order") governs proper classification of information and the treatment of properly classified information. Section 3.7(a) of the Order provides that any agency may refuse to confirm or deny the existence of records when that fact is, itself, classified. Information which is properly classified—such as the fact of the existence or non-existence of certain records under section 3.7(a) of the Order - is exempt from disclosure under FOIA exemption (b)(1). Accordingly, the CIA properly denied Plaintiff's FOIA request pursuant to Exemption 1 of the FOIA, 5 U.S.C. § 552(b)(1) .

Furthermore, Plaintiff's FOIA request seeks information on intelligence sources and methods. Section 403g of the Central Intelligence Agency Act protects from unauthorized disclosure the information relating to its core function: foreign intelligence collection through intelligence sources and methods. This Act is a "withholding statute" for purposes of FOIA Exemption 3, 5 U.S.C. § 552(b)(3), which exempts from disclosure information "specifically exempted from disclosure by statute." Accordingly, the CIA properly denied Plaintiff's FOIA request pursuant to FOIA Exemption 3, 5 U.S.C. § 552(b)(3).

# I.  BACKGROUND

Plaintiff submitted the Privacy Act and FOIA request that is the subject of this litigation by letter dated January 8, 2007 to the CIA.  Dimaio Decl. ¶ 5, Exhibit A.  In that letter, he requested records on the "U.S.- Japan Security Treaty" and the "terrorism special measures law", as well as records on himself.  *Id*.  By letter dated January 17, 2007, the CIA acknowledged receipt of Plaintiff's request and responded that it could "neither confirm nor deny" the existence or nonexistence of any CIA records responsive to his request for records on himself.  Dimaio Decl. ¶ 6, Exhibit B.  With respect to the rest of his request, the CIA referred Plaintiff to the State Department.  *Id*.

By letter dated March 23, 2007, Plaintiff appealed the CIA's denial of his FOIA request for records on himself.  Dimaio Decl. ¶ 7, Exhibit C.  By letter dated March 28, 2007, the CIA advised Plaintiff that his appeal rights had expired.  Dimaio Decl. ¶ 8, Exhibit D.

By letter dated April 6, 2007, Plaintiff submitted another FOIA and PA request to the CIA that asked for the identical information as his earlier request. Dimaio Decl. ¶ 9, Exhibit E. By letter dated April 12, 2007, the CIA advised Plaintiff that it had already provided him with a response to this request.  Dimaio Decl. ¶ 10, Exhibit F.

By letter dated April 18, 2007, Plaintiff submitted to the CIA the same FOIA and PA request for a third time.  Dimaio Decl. ¶ 11, Exhibit G.  By letter dated May 9, 2007, the CIA advised Plaintiff that it had already responded to this request and did not intend to correspond with him further.  Dimaio Decl. ¶ 12, Exhibit H.  By letter dated December 7, 2007, Plaintiff appealed the CIA's final response.  Dimaio Decl. ¶ 13, Exhibit I.  By letter dated December 12, 2007, the CIA advised Plaintiff that his appeal rights had expired on March 3, 2007.   Plaintiff

then filed this suit on February 27, 2008.  *See* Docket No. 1.

## II.  LEGAL STANDARDS OF REVIEW

### A.  Motion to Dismiss Under Rule 12(b)(1)

A motion under 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987), *aff'd*, 213 F.3d 735 (D.C. Cir. 2000), *cert. denied*, 531 U.S. 1153 (2001).  "In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *Thompson v. Capitol Police Board*, 120 F. Supp. 2d 78, 81 (D.D.C. 2000) (citations omitted). "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao, Dep't. of Labor*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001) (citations omitted), *affirmed*, 346 F.3d 192 (D.C. Cir. 2003), *cert. denied*, 543 U.S. 809 (2004).  In addition, "[o]n a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction by a preponderance of the evidence." *Thompson*, 120 F. Supp. at 81.

A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) in two ways.  First, the court may determine the motion based solely on the complaint.  *Herbert v. National Academy of Science*, 974 F.2d 192, 197 (D.C. Cir. 1992). Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  *Id*.

Courts must liberally construe pleadings submitted by a *pro se* party.  *See United States* v.

4

*Palmer*, 296 F.3d 1135, 1143 (D.C. Cir. 2002) (citing *Haines v. Kerner*, 404 U.S. 519, 520

(1972) for the proposition that the allegations of a *pro se* litigant, "however inartfully pleaded,"

are subject to "less stringent standards than formal pleadings drafted by lawyers".).  However, a

court may not entertain "what[ever] claims a [*pro se* litigant] may or may not want to assert"

without an adequate jurisdictional basis.  *Jarrell v. Tisch*, 656 F.Supp. 237, 239 (D.D.C. 1987).

### B.      Motion to Dismiss Under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim upon which relief can be granted

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court will dismiss a claim

if Plaintiff's complaint fails to plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*,  — U.S. —, 127 S.Ct. 1955, 1974 (2007) (clarifying the

standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Aktieselskabet v. Fame*

*Jeans, Inc*.,--F.3d--, 2008 WL 1932768 (D.C. Cir. Apr. 29, 2008); *In re Sealed Case*, 494 F.3d

139, 145 (D.C. Cir. 2007) (citing *Twombly*).  Hence, the focus is on the language in the

complaint, and whether that language sets forth sufficient factual allegations to support a

plaintiff's claims for relief.

The Court must construe the factual allegations in the complaint in the light most

favorable to Plaintiff and must grant Plaintiff the benefit of all inferences that can be derived

from the facts as they are alleged in the complaint.  *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C.

Cir. 2004) (citing *Kowal v. MCI Commc'ns Corp*., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

However, the Court need not accept any inferences or conclusory allegations that are unsupported

by the facts pleaded in the complaint.  *Kowal*, 16 F.3d at 1276.  Moreover, the Court need not

"accept legal conclusions cast in the form of factual allegations."  *Id*.

5

C.    **Motion for Summary Judgment Under Rule 56**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To determine which facts are material, the Court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the Court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. *Id.*, at 255. A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of his position. *Id.* at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, at 249-250. The non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts." *Matsushita Elc. Indus. Radio Corp.*, 475 U.S. 574, 586 (1986).

D.    **Summary Judgment In FOIA Cases**

For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to *de novo* review by the Courts. *Hayden v. National Security Agency Cent. Sec. Serv.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980). In a

6

FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts

are in dispute and that each document that falls within the class requested either has been

produced, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dept. of*

*State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 368

(D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the

Court and a plaintiff with affidavits or declarations which show that the documents are exempt

from disclosure. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); *Canning v. United States*

*Dep't of Justice*, 848 F. Supp. 1037, 1042 (D.D.C.) (agencies are typically permitted to meet

[their] heavy burden by 'filing affidavits describing the material withheld and the manner in

which it falls within the exemption claimed." (quoting *King v. United States Dep't of Justice*,

830 F.2d 210, 217 (D.C. 1987)).  Summary judgment may be granted to an agency in a FOIA

case solely on the basis of agency affidavits or declarations if the "affidavits [or declarations] are

'relatively detailed, non-conclusory, and not impugned by evidence . . . of bad faith on the part of

the agency.'"  *McGhee v. Central Intelligence Agency*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).

*See also Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *Hayden v.*

*National Security Agency Cent. Sec. Serv.*, 608 F.2d at 1387.  "Summary judgment is warranted

on the basis of agency affidavits when the affidavits describe 'the justification for nondisclosure

with reasonably specific detail, demonstrate that the information withheld logically falls within

the claimed exemption, and are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith.'"  *Miller v. Casey,* 730 F.2d 773, 776 (D.C. Cir. 1984) (quoting

*Military Audit Project v. Casey*, 656 F.2d at 738).

In a FOIA case, the Court may award summary judgment solely based on the information provided in affidavits or declarations when they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d at 738.

## III.  ARGUMENT

### A.  THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE DEFENDANT IS NOT A PROPER PARTY

The FOIA grants district courts "jurisdiction to enjoin the *agency* from withholding agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B) (emphasis added).   Therefore, the only proper defendant in a FOIA case is a federal agency. *Jefferson v. Reno*, 123 F.Supp.2d 1, 3 (D.D.C. 2000) (under FOIA, it is the agency's responsibility to produce the requested documents); *Whittle v. Moschella*, 756 F.Supp. 589, 596 (D.D.C. 1991) (citing *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) (holding that the Court's jurisdiction is "limited to enjoining agency noncompliance . . .".).   This Court lacks jurisdiction to hear FOIA claims against individuals, even where such individuals are agency heads or other agency officials named in their official capacity. *Santini v. Taylor*, --- F.Supp.2d --- , 2008 WL 2190936 (D.D.C. 2008) (citing *Santos v. Drug Enforcement Agency*, 357 F.Supp.2d 33, 36 (D.D.C. 2004); *Stone v. Defense Investigative Service*, 816 F.Supp. 782, 785 (D.D.C. 1993)).   Accordingly, Defendant Michael V. Hayden, Director of the CIA, is not a proper party in this FOIA action and this case should be dismissed for lack of subject matter jurisdiction.

## B.  PLAINTIFF FAILED TO EXHAUST
## ADMINISTRATIVE REMEDIES

FOIA confers jurisdiction upon the Court to provide relief to a plaintiff only where requested documents have been "improperly withheld" by an agency.  5 U.S.C. § 552(a)(4)(B). The courts have interpreted this section of the statute to mean that jurisdiction exists only upon a showing by the plaintiff that the defendant (1) improperly (2) withheld (3) agency records.  *See Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150 (1980).  Indeed, "[t]he plaintiff must show that the agency 'contravened all three components of this obligation' in order for jurisdiction to be valid." *Kuffel v. U.S. Bureau of Prisons*, 882 F. Supp. 1116, 1120 (D.D.C. 1995) (*citing Kissinger*, 445 U.S. at 151.)  Absent such a showing, FOIA confers no "judicial authority to devise remedies and enjoin agencies." *Id.*

Exhaustion of administrative remedies is required under FOIA before a party can seek judicial review. *Dettmann v. United States Dep't of Justice*, 802 F.2d 1472, 1477 (D.C. Cir. 1986).  A FOIA requester is deemed to have failed to exhaust administrative remedies whenever the requester fails to comply with the administrative procedures set forth under FOIA, including: (1) providing the required proof of identity, *Summers v. United States Dep't of Justice*, 999 F.2d 570, 572-73 (D.C. Cir. 1993);  (2) reasonably describing the records sought, *Gillin v. IRS*, 980 F.2d 819, 822-23 (1st Cir. 1992);  (3) complying with fee requirements, *Trueblood v. United States Dep't of Treasury*, 943 F. Supp. 64, 68 (D.D.C. 1996); and (4) administratively appealing a denial of records, *Oglesby v. United States Dep't of the Army*, 920 F.2d 57 (D.C. Cir. 1990). *See also* 5 U.S.C. § 552(a)(3) (requester must follow agency's published regulations governing FOIA requests); *Kessler v. United States*, 899 F. Supp. 644, 645 (D.D.C. 1995) (failure to follow

9

agency regulations constitutes failure to exhaust administrative remedies).  Where a FOIA

plaintiff attempts to obtain judicial review without having first fully exhausted his administrative

remedies, his lawsuit is subject to dismissal for lack of subject matter jurisdiction.  *Oglesby*, 920

F.2d at 57.

In this case, Plaintiff was notified that he had 45 days in which to appeal the CIA's initial

response.  *See* Dimaio Decl. ¶ 6, Exhibit B.  Instead, he continued to make the same request over

and over to the CIA.  When he finally did appeal, Plaintiff's time in which to appeal had expired.

*See* Dimaio Decl. ¶ 8, Exhibit D.  Accordingly, because Plaintiff failed to exhaust his

administrative remedies, his FOIA claims should be dismissed.

## C.  THE CIA PROPERLY RESPONDED TO PLAINTIFF'S FOIA REQUESTS

In the event that the Court interprets Plaintiff's complaint as one brought against the CIA,

Plaintiff's claims still fail.  As discussed below, the CIA properly responded to Plaintiff's FOIA

requests and there is no genuine issue of material facts.  Accordingly, the CIA is entitled to

summary judgment as a matter of law.

### 1.  Exemption 1

FOIA Exemption 1 exempts from disclosure matters that are "(A) specifically authorized

under criteria established by an Executive order to be kept secret in the interest of national

defense or foreign policy and (B) are in fact properly classified pursuant to such Executive

Order."  5 U.S.C. § 552(b)(1).  Under sections 1.5(c) and 1.5(d) of Executive Order 12958,

information is considered classified where it concerns, *inter alia*, intelligence activities,

intelligence sources or intelligence methods or foreign relations or activities.  According to

10

section 1.2 of the Order, information fitting into one or more of these categories may be classified where the appropriate classification authority determines that the unauthorized disclosure, either by itself or in the context of other information, reasonably could be expected to cause damage to the national security that the declassification authority is able to identify and describe. In this case, the appropriate classification authority—the Agency official charged with such reviews—has determined that the very fact of the existence or nonexistence of information sought by Plaintiff, a foreign national, could reveal information about intelligence activities, sources and methods, including intelligence targeting, priorities and capabilities, as well as the foreign relations of the United States. Therefore, that fact is properly classified. Dimaio Decl. ¶¶ 16, 18.

As a result of this classification, the Agency's response to neither confirm nor deny the existence of responsive records is directly in accordance with section 3.7(a) of the Order, which provides that an agency may "refuse to confirm or deny the existence or nonexistence of requested information whenever the fact of its existence or nonexistence is itself classified."

This standard is contained in the CIA's published regulations which advise that: the Agency shall decline to confirm or deny the existence or nonexistence of any responsive records whenever the fact of their existence or nonexistence is itself classified under Executive Order 12958 or revealing of intelligence sources and methods protected pursuant to section 103(c)(5) of the National Security Act of 1947. *See* 32 C.F.R. § 1900.21(c).

In this case, the CIA properly determined that it could neither confirm nor deny the existence or non-existence of records responsive to Plaintiff's FOIA request for information on himself because such a confirmation or denial would reveal classified facts, including whether or

11

not a particular individual was of intelligence interest to the United States. Based on an admission or denial in the public record of the existence of records in this case, forces opposed to the United States or CIA would be told whether or not CIA had collected information on a particular individual, either as part of its own intelligence gathering mission or at the behest of other government agencies. Such information would reveal the intelligence gathering priorities of the U.S. government as well as the specific targets—or lack thereof—of U.S. intelligence missions. Such information would reveal not only the interests, but the capabilities of CIA, in support of U.S. foreign policy, to satisfy those interests. Such information on foreign intelligence activities—or, again, the lack thereof—would, in turn, directly implicate information on intelligence sources and methods, as more fully described in the Declaration. *See* Dimaio Decl. ¶¶ 24-30.

For example, if the CIA were to confirm the existence of records indicating that it had gathered information on a particular individual, a hostile intelligence service would learn U.S. intelligence priorities as well as that it was the target of intelligence gathering. *See* Dimaio Decl. ¶ 22. In light of the foregoing, CIA accurately determined that the existence or nonexistence of records responsive to Plaintiff's FOIA request is a classified fact and is therefore exempt from disclosure pursuant to FOIA exemption (b)(1).

As detailed in the Dimaio Declaration, although the response to neither confirm nor deny the existence of records may be frustrating to a FOIA requester, it is vitally necessary to ensure that CIA does not reveal classified information simply through a pattern of responses to FOIA requests. Dimaio Decl. ¶ 18. Even if CIA has no documents responsive to FOIA requests that seek classified information—such as the existence of specific intelligence targeting—the CIA

12

cannot provide requesters with a "no records" response.  Were CIA to provide a "neither confirm nor deny" response only where it had records and to provide a "no records" response where it did not have records, then a review of CIA's FOIA responses would, itself, reveal CIA intelligence priorities and missions.  Because CIA will not provide a "no records" response untruthfully, i.e., where it actually has records, CIA's only protection in such circumstances is to provide the same response to all such FOIA requests, regardless of whether or not it actually possesses responsive records.  Dimaio Decl. ¶ 18.

Courts have upheld CIA's position in similar circumstances.  In *Miller v. Casey*, 730 F.2d 773 (D.C. Cir. 1984), the United States Court of Appeals for the District of Columbia Circuit upheld the CIA's refusal, in response to a FOIA request, to confirm or deny the existence of records regarding alleged covert operations in Albania following World War II.  The court held that the "CIA's central premise—that an answer to whether the files existed would be tantamount to declaring whether the mission occurred—is . . . sound."  *Miller v. Casey*, 730 F.2d at 776. Although the events in Albania were alleged to have occurred decades prior to the FOIA request the court found that "CIA's claim of foreseeable harm to the national security is all but indisputable."  *Id*. at 777.  *See also, Wolf v. Central Intelligence Agency*, 355 F.3d 675 (D.C. Cir. 2004).  The very same considerations are relevant in the current litigation and support summary judgment for the CIA.

### 2.    Exemption 3

Under FOIA Exemption 3, information that is "specifically exempted from disclosure by statute" is, under certain conditions, exempt from disclosure under the FOIA.  5 U.S.C. § 552(b)(3).  In order for it to be a "withholding statute" for purposes of FOIA Exemption 3, a

statute must "(A) require that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establish particular criteria for withholding or refer to particular types of matters to be withheld." *Id*.  The CIA relies for its withholding in this case on Section 403g of the Central Intelligence Agency Act of 1949.  Dimaio Decl. ¶ 34.  The Supreme Court has held that this is a "withholding statute[s]" for purposes of FOIA Exemption 3.  *See CIA v. Sims*, 471 U.S. 159, 179 (1985).  The Supreme Court in *Sims*, noting the "wide-ranging authority" given to the DCI to protect intelligence sources and methods, held that it was "the responsibility of the DCI, not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk. . . ." *Id*. at 180.  The United States Court of Appeals for the Fifth Circuit has also stated unequivocally that "the FOIA simply does not apply to material the DCI specifically has exempted on the ground that it pertains to or could give rise to inferences about intelligence sources and methods." *Knight v. U.S.C.I.A.*, 872 F.2d 660, 664 (5th Cir. 1989).

In the present case, the Agency has determined that confirming or denying the existence of responsive records would divulge intelligence targeting, priorities and capabilities as well as intelligence sources and methods.   Dimaio Decl. ¶¶ 34-35.  The information sought by Plaintiff—information that would confirm or deny the existence of an intelligence interest in a particular individual — falls squarely within the scope of the DCI's protective mandate under the CIA Act.  The fact of the existence or nonexistence of such information is, therefore, properly exempt from disclosure pursuant to FOIA Exemption 3.

14

## CONCLUSION

Because Defendant Michael V. Hayden is not a proper defendant in this FOIA case and Plaintiff failed to properly exhaust his administrative remedies, this complaint should be dismissed.  Alternatively, because the evidence demonstrates that the CIA did not improperly withhold any agency records from Plaintiff, the CIA respectfully requests that this Court grant its Motion for Summary Judgment.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____/s/_____
JUDITH A. KIDWELL
Assistant United States Attorney
555 4th Street, N.W.-Civil Division
Washington, D.C.  20530
(202) 514-7250

15

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that copies of the foregoing Motion to Dismiss or Alternatively,

Motion for Summary Judgment, Statement of Material Facts To Which There Is No Genuine

Issue, Memorandum of Points and Authorities in Support, and the Declaration of Ralph S.

Dimaio were mailed, postage prepaid, to Plaintiff *pro se* at the following address:

Kouichi Nakamura
Niho-Minami 1-Chome Minami-Ku
Hiroshima-Shi 734-0027
Hiroshima, Japan

on this 6th day of June, 2008.

                                    _____/s/_____
                                    JUDITH A. KIDWELL
                                    Assistant United States Attorney

16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KOUICHI NAKAMURA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 08-0354 (CKK) |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| MICHAEL V. HAYDEN | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DECLARATION OF RALPH S. DIMAIO
INFORMATION REVIEW OFFICE
NATIONAL CLANDESTINE SERVICE
CENTRAL INTELLIGENCE AGENCY**

I, RALPH S. DIMAIO, hereby declare and say:

1.  I am the Information Review Officer (IRO) for the
National Clandestine Service (NCS) of the Central
Intelligence Agency (CIA).  I was appointed to this
position on 11 June 2007.  I have held several operational
and administrative positions in the CIA since 1983.  I make
this declaration in support of the CIA's motion to dismiss
or, in the alternative, for summary judgment in this
proceeding.

2.   The NCS is the organization within the CIA responsible for conducting the CIA's foreign intelligence and counterintelligence activities; conducting special activities, including covert action; conducting liaison with foreign intelligence and security services; serving as the repository for foreign counterintelligence information; supporting clandestine technical collection; and coordinating CIA support to other U.S. Government agencies. Specifically, the NCS is responsible for the conduct of foreign intelligence collection activities through the clandestine use of human sources.

3   As IRO, I am authorized to assess the current, proper classification of CIA information, based on the classification criteria of Executive Order 12958, as amended[1], and applicable CIA regulations. As part of my official duties, I am authorized to review proposals for release or withholding of information originated by the CIA or implicating CIA interests, such as those under the Freedom of Information Act, 5 U.S.C. §552, and the Privacy Act, 5 U.S.C. §552a. I am able to describe, based on my experience, the damage to national security that reasonably

---

[1] Executive Order 12958 was amended by Executive Order 13292. See Exec. Order No. 13292, 68 Fed. Reg. 15315 (Mar. 28, 2003). All citations to Exec. Order No. 12958 are to the Order as amended by Exec. Order No. 13292. See Exec. Order No. 12958, 3 C.F.R. 333 (1995), reprinted as amended in 50 U.S.C.A. § 435 note at 187 (West Supp. 2007).

could be expected to result from the unauthorized disclosure of specific classified information.

4.  Through the exercise of my official duties, I am familiar with this case and the Plaintiff's underlying FOIA and Privacy Act requests.  I make the following statements based upon my personal knowledge and information made available to me in my official capacity.  For the Court's convenience, I have divided this declaration into three parts:  (a) the Plaintiff's FOIA request; (b) the bases for CIA's response to the  Plaintiff's FOIA request; and(c) the bases for the FOIA exemptions exercised by CIA in this action.

## I.   THE PLAINTIFF'S FOIA REQUEST

5.  The Plaintiff submitted a written FOIA and Privacy Act request to CIA dated 8 January 2007.  The Plaintiff's request sought information or records relating to him and information relating to the "terrorism special measures law" and the "U.S. Japan Security Treaty".  A true and correct copy of the Plaintiff's 8 January 2007 letter is attached as Exhibit A.

6.  By letter dated 17 January 2007, CIA provided the Plaintiff with a final response to his FOIA and Privacy Act

request.[2]   CIA referred the Plaintiff to the Department of State for information regarding the terrorism special measures law and the U.S. Japan Security Treaty.  For that portion of his request pertaining to records on himself, the CIA informed the Plaintiff that pursuant to section 3.6(a) of Executive Order 12958, as amended, "the CIA can neither confirm nor deny the existence or nonexistence of records responsive to your request."  Accordingly, CIA denied the Plaintiff's request pursuant to FOIA exemptions (b)(1) and (b)(3).  CIA also informed the Plaintiff that he had a right to appeal the finding to the Agency Release Panel.  A true and correct copy of CIA's 17 January 2007 letter is attached as Exhibit B.

7.  By letter dated 23 March 2007, the Plaintiff appealed the CIA decision on his FOIA request regarding himself.  A true and correct copy of the Plaintiff's 23 March 2007 letter is attached as Exhibit C.

8.  By letter dated 28 March 2007, the CIA advised the Plaintiff that his appeal rights expired on 3 March 2007. Therefore, it could not accept his appeal.  A true and correct coy of CIA's 28 March 2007 letter is attached as Exhibit D.

---

[2] Notwithstanding the language of CIA's initial response to the Plaintiff, the Privacy Act only gives rights to U.S. persons. 5 U.S.C. §552a(a)(2).  As the Plaintiff is not a U.S. person, he is not entitled to access under the Privacy Act.

4

9. By letter dated 6 April 2007, the Plaintiff submitted another FOIA and Privacy Act request that asked for the identical information as the earlier request. A true and correct copy of the Plaintiff's 6 April 2007 letter is attached as Exhibit E.

10. By letter dated 12 April 2007, the CIA provided the Plaintiff with a final response to his request stating that it had already provided him a response to that request by letter dated 17 January 2007 and provided him with another copy of that response. A true and correct copy of CIA's 12 April 2007 letter is attached as Exhibit F.

11. By letter dated 18 April 2007, the Plaintiff submitted to the CIA the same FOIA and Privacy Act request for the third time. A true and correct copy of the Plaintiff's 18 April 2007 letter is attached as Exhibit G.

12. By letter dated 9 May 2007, the CIA advised the Plaintiff that it had already provided him with a response to his request and that it did not intend to correspond with him further on the matter. A true and correct copy of CIA's 9 May 2007 letter is attached as Exhibit H.

13. By letter dated 7 December 2007, the Plaintiff exercised his right to appeal CIA's final response. A true and correct copy of the Plaintiff's 7 December 2007 letter is attached as Exhibit I.

14. By letter dated 12 December 2007, the CIA advised the Plaintiff that his appeal rights expired on 3 March 2007. Therefore, it could not accept his appeal. A true and correct copy of CIA's 12 December 2007 letter is attached as Exhibit J.

15. On 27 February 2008, the Plaintiff filed a complaint in this Court for, among other things, CIA's decision to neither confirm nor deny the existence or nonexistence of records in response to his FOIA request for records on him. By order dated 27 February 2008, the Court dismissed all allegations in the complaint except those brought under the FOIA.

## II. BASES FOR CIA'S RESPONSE TO THE PLAINTIFF'S FOIA REQUEST

16. CIA's response to the Plaintiff's FOIA request -- neither confirming nor denying the existence or non-existence of records -- is commonly referred to as a "Glomar" response.[3] Such a response protects a specific and narrow type of classified fact, and is provided for under Executive Order 12958, section 3.6(a):

An agency may refuse to confirm or deny the

---

[3] The "Glomar" term comes from the case Phillippi v. CIA, 546 F.2d 1009 (D.C. Cir. 1976), which upheld CIA's use of the "neither confirm nor deny" response to a FOIA request for records concerning CIA's reported contacts with the media regarding the Hughes Glomar Explorer.

6

existence or nonexistence of requested records whenever the fact of their existence or non-existence is itself classified under this order or its predecessors.

The particular request by the Plaintiff for information about himself is just such a narrow circumstance, wherein the mere confirmation or denial of the existence of responsive records would reveal a classified fact -- namely, whether CIA has gathered information on a specific foreign national.

17. By contrast, in a typical circumstance, a FOIA requester submits a request to CIA for information on a particular subject, and CIA responds by conducting a search of non-exempt records and advising whether responsive records were located. If records are located, CIA provides those non-exempt records or reasonably segregable non-exempt portions of records, and withholds the remaining exempt records and exempt portions of records. In this typical circumstance, CIA's answer, either to provide or not to provide the records sought, actually confirms to the requester (and to the public, for that matter) the existence or non-existence of such CIA records. Typically, this confirmation poses no harm to the national security or intelligence sources and methods, because the focus is on releasing or withholding specific substantive information.

The fact that the CIA possesses or does not possess records is not itself a classified fact.

18. However, a request for whether the CIA maintains records on a particular foreign national must be handled by neither confirming nor denying the existence of such records. As discussed in greater detail below, this response is necessary to safeguard intelligence sources and methods, as well as U.S. foreign relations. Furthermore, CIA must respond to requests for CIA records on foreign nationals in a consistent manner. In order for a "Glomar" response to be credible and effective, CIA must use it with every requester seeking records on a foreign national (unless officially acknowledged by CIA), including in those instances in which CIA does not actually hold records on the subject individual. If CIA were to give a Glomar response only when it possessed responsive records, and inform requesters when it has no records, the Glomar response would quickly become an admission of records. Because CIA will not provide a "no records" response when it actually does have records, the only means by which CIA can protect the identities of actual sources and intelligence targets is to routinely issue a Glomar response to requesters seeking records on foreign nationals

regardless of whether it actually possesses responsive records.

19. For example, if CIA admits that it possesses intelligence information about a particular foreign national, such as the Plaintiff, it essentially alerts the foreign national, as well as foreign intelligence services, that CIA intelligence methods have been applied against him. The foreign national or the foreign intelligence services could then take countermeasures to identify and frustrate the method thereby making his future activities undetectable by CIA. If the countermeasures are successful, CIA will lose its ability to monitor their activities. Moreover, others who have been or may be collaborating with the foreign national also will soon cease engaging in these detectable activities with similar results negative results for CIA.

20. Conversely, if CIA states it does not possess information about a particular foreign national such as the Plaintiff, CIA essentially admits to that individual or foreign intelligence service that his efforts to conceal his activities have been successful and that the foreign national or foreign intelligence service would know that operational security practices have successfully defeated CIA intelligence methods. Moreover, other foreign

9

nationals could learn of and begin to emulate this same
successful pattern of undetectable intelligence activities
with similar results.

21.  Though the potential harm to CIA from the two
preceding examples is self-evident, the potential harm to
CIA is possibly magnified if a foreign intelligence service
were to submit multiple FOIA requests.  For example, if a
foreign intelligence service were to submit separate FOIA
requests for information concerning all nationals it
suspected of being CIA collaborators, and CIA were to
provide a response other than to neither confirm nor deny
the existence of such records, CIA would, in essence,
provide the foreign intelligence service with information
that would greatly aid it in eliminating CIA's intelligence
network in that particular country.

22.  Finally, the effective collection and analysis of
intelligence requires CIA to prevent disclosing to our
adversaries the specific persons and areas in which CIA is
interested, and upon which it focuses its methods and
resources.  Every country or group has limited resources.
The disclosure to a potential U.S. intelligence target of
the areas and persons of CIA interest would indicate to
that target how CIA is allocating its resources.
Therefore, the target may array its counterintelligence and

security resources most efficiently to frustrate the CIA.
The more efficiently an intelligence target may apply its
counterintelligence resources, the more likely it will deny
the information of interest to the United States.

### III.   APPLICABLE FOIA EXEMPTIONS

#### A.   FOIA Exemption (b)(1)

23.   FOIA Exemption (b)(1), 5 U.S.C. § 552(b)(1),
provides that the FOIA disclosure provisions do not apply
to matters that are:

> (A) specifically authorized under criteria
> established by an Executive Order to be kept secret in
> the interest of national defense or foreign policy,
> and (B) are in fact properly classified pursuant to
> such Executive order.

The President has determined that intelligence sources and
methods warrant special protection, and thus are exempt
from disclosure based on FOIA exemption (b)(1).

#### 1.   Intelligence Sources and Methods

24.   Executive Order 12958, section 1.4, specifies
categories of information that are eligible for
classification.  One such category is information
concerning intelligence activities or intelligence sources
or methods.[4]  In addition, Executive Order 12958, section
1.1(a)(4) provides that information falling within one of

---

[4] Exec. Order No. 12958 § 1.4(c).

11

those categories must be classified when an "original
classification authority determines that the unauthorized
disclosure of the information reasonably could be expected
to result in damage to the national security."[5]

25.  CIA's covert intelligence interest in a specific
individual represents an intelligence activity, source,
and/or method, the unauthorized disclosure of which
reasonably could be expected to cause serious damage to the
national security.  For reasons further detailed below, a
Glomar response, consistently applied to FOIA requests such
as the Plaintiff's, is the only appropriate response to
effectively protect the United States against groups who
seek to learn about its covert intelligence sources and
methods.

26.  The monitoring of each individual of potential
intelligence interest to CIA is a very costly enterprise
with significant resource and national security
implications.  At present, these costs are, in a sense,
shared by both CIA (which attempts to monitor the
operatives) and the foreign intelligence service (which
attempts to conceal from CIA the identities of its

---

[5] In addition to providing for classification of such information,
section 6.2(c) of Executive Order 12958 also specifies that "[n]othing
in this order limits the protection afforded any information by other
provisions of law, including . . . the National Security Act of 1947."
This provision, therefore, requires the withholding of intelligence
sources and methods even if they do not warrant classification.

12

operatives). CIA may sometimes expend resources monitoring

a particular individual who is not, in fact, an

intelligence operative, while foreign intelligence

operatives may sometimes undertake elaborate precautions

because they believe they are being monitored by CIA when,

in fact, they are not. If CIA were required to confirm or

deny the existence or nonexistence of CIA records about a

given individual, it would reveal whether it had an

intelligence interest in that person. Such a revelation

would provide the foreign intelligence service with

information concerning which intelligence operatives or

types of intelligence activities CIA can and cannot

monitor. Furthermore, it may also indicate the potential

human sources or methods by which CIA obtained intelligence

on that person.

27. Human intelligence sources can be expected to

furnish information to CIA only when they are confident

that CIA will protect their cooperation from public

disclosure. In the case of a foreign national abroad who

has been cooperating with the CIA, official confirmation of

that cooperation could cause the target government to take

retaliatory action against that person, his family and

friends, and his contacts. Furthermore, it would also

seriously damage this nation's credibility with other

intelligence sources who might conclude that the CIA is unwilling or unable to protect their cooperation with the United States from public disclosure. To betray such confidentiality would seriously damage the United States' ability to retain present sources and recruit new sources.

28. Intelligence methods include the basic business practices and methodological "tools" used by CIA to accomplish its mission. Intelligence methods must be protected from disclosure in every situation where a certain intelligence interest, capability, or technique is unknown to those groups that could take countermeasures to nullify its effectiveness. Secret information-collection techniques, capabilities, or technological devices are valuable (from an intelligence-gathering perspective) only so long as they remain unknown and unsuspected. Once an intelligence method (or the fact of its use in a certain situation) is discovered, its continued successful use by CIA is seriously jeopardized. In fact, detailed knowledge of intelligence methods must be protected from disclosure because such knowledge would be of material assistance to those who seek to detect, prevent, or damage U.S. intelligence operations.

29. Because foreign intelligence services view discovery of CIA methodology as one of their primary

defensive missions, these admissions would be of great
benefit, by enabling the foreign services to redirect their
resources to identify potential CIA sources, circumvent
CIA's monitoring efforts, and generally enhance their
intelligence activities at the expense of the United
States.  As a result, CIA's efforts can be thwarted or made
more difficult, reducing the CIA's effectiveness, requiring
a diversion of CIA resources, and resulting in a loss of
valuable intelligence information.

    30.  In exercising and fulfilling its mission, CIA
must do more than prevent explicit references to an
intelligence method; it must also prevent indirect
references to such a method.  A primary vehicle for
gathering intelligence methods information is by reviewing
officially-released information.  We know that foreign
intelligence services have the capacity and ability to
gather information from myriad sources, analyze it, and
deduce means and methods (from disparate and even seemingly
unimportant details) to defeat CIA collection efforts.
Even seemingly innocuous, indirect references to an
intelligence method could have significant adverse effects
when juxtaposed with other publicly-available data.

    31.  As discussed in Section III below, intelligence
sources and methods information also falls within the ambit

15

of the National Security Act of 1947, as amended, 50
U.S.C.A. § 403-1(i)(1) (West Supp. 2007) and Section 6 of
the Central Intelligence Act of 1949, as amended, 50
U.S.C.A. § 403g, and thus is exempt from disclosure under
FOIA exemption (b)(3). The information sought by the
Plaintiff is specifically related to this statutory
protection. Accordingly, FOIA exemptions (b)(1) and (b)(3)
apply independently and co-extensively to the Plaintiff's
request.

## 2.   U.S. Foreign Relations

32.   In addition to intelligence sources and methods,
U.S. foreign relations comprise another category of
information eligible for classification pursuant to
Executive Order 12958.[6] I have determined that official
acknowledgment that CIA maintains information concerning a
particular foreign national could be construed by that
foreign government, whether friend or adversary, to mean
that CIA has collected intelligence information on or
recruited one of its citizens or resident aliens. Such a
perception could adversely affect U.S. foreign relations
with that nation. This is especially true where U.S.
allies are concerned.

---

[6] Exec. Order No. 12958 § 1.4(d).

16

33. Further, an official acknowledgment that CIA
maintains information on a particular individual can be
tantamount to a CIA admission that it has or has not
collected (or intends to collect) specific information on
specific foreign targets during specific time periods.
Such an admission by CIA invariably would adversely affect
U.S. foreign relations. If a covert interest in a foreign
national were publicly acknowledged, countries to which
that individual traveled and lived could be expected to
respond based on its perception of the U.S. disclosure.
The foreign government's response could be of a diplomatic
or economic nature, a ground for anti-American propaganda,
or a reason for retaliation against former associates
including American citizens or other American interests.
Such responses could reasonably be expected even though the
events may be several years past. Experience has taught
that perceptions of violation of sovereignty will generate
retribution even years later.

B.   FOIA Exemption (b)(3)

34. FOIA exemption (b)(3), 5 U.S.C. § 553(b)(3),
provides that the FOIA disclosure provisions do not apply
to matters that are:

> specifically exempted from disclosure by statute
> . . . provided that such statute (A) requires
> that the matters be withheld from the public in

such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

35.   Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C.A. § (West Supp. 2007), provides the Director of National Intelligence (DNI) "shall protect intelligence sources and methods from unauthorized disclosure". For the reasons stated above in Section II, the information sought by the Plaintiff is specifically related to intelligence sources and methods.

36.   Similarly, Section 6 of the Central Intelligence Act of 1949, as amended, 50 U.S.C. § 403g, provides that in the interests of the security of the foreign intelligence activities of the United States and in order to further implement section 403-1(i) of Title 50 that the Director of National Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure, the CIA shall be exempt from the provision of any law requiring the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by CIA.  As such, under section 6, CIA is exempt from disclosing any information relating to its core function:  foreign intelligence collection through its intelligence sources and methods.

18

37.  Because the Plaintiff's request falls within the
ambit of the Section 102(A) (i) (1) of the National
Security Act and Section 6 of the Central Intelligence
Agency Act, it is exempt from disclosure under FOIA
exemption (b) (3).  In contrast to Executive Order 12958,
as amended, both these statutes further protect
intelligence sources and methods and do not require the CIA
to identify or describe the damage to national security
that reasonably could be expected to result should the CIA
confirm or deny the existence of records to the Plaintiff's
FOIA request.  Regardless, as both the statutes and the
Executive Order relate to the protection of sources and
methods, I refer the Court to Section II above for a
description of the damage to national security should
anything but a Glomar response be provided to the Plaintiff
in this case.  According, FOIA exemptions (b) (1) and (b)
(3) apply independently and co-extensively to the
Plaintiff's request.

V.    CONCLUSION

38.  The existence or nonexistence of CIA records
regarding the Plaintiff, irrespective of the content of
such putative records, is so intricately intertwined with

19.

intelligence sources and methods and U.S. foreign relations, that this fact itself must remain classified. Therefore, the only appropriate response is for CIA to neither confirm nor deny the existence or nonexistence of such records under FOIA Exemptions (b) (1) and (b) (3). Except in those few instances where there already has been an official affirmation or denial by an authorized United States Executive Branch official of CIA's involvement with a particular foreign national, no acceptable alternative exists to CIA's position. As no such affirmation has occurred with respect to the subject of the Plaintiff's FOIA request, I have determined that a Glomar is the only appropriate response to the Plaintiff's FOIA request.

\*      \*      \*      \*

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of June 2008.

_Ralph S. DiMaio_

Ralph S. DiMaio
Information Review Officer
National Clandestine Service
Central Intelligence Agency

MICHAEL
F-2007-00546

2007 JAN -6 AM 6:51

Date) 2007/01/08

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

Dear Coordinator: Under the Freedom of Information Act, 5 U.S.C
subsection 552 and the Privacy Act, 5 U.S.C. section 552a, please
furnish me with copies of all records (the Agency does not require
you to specify the record system) about me indexed to my name.

To help identify information about me in your record systems, I am
providing the following required information =
Full name = Kouichi Nakamura / Current adress = 26-13, Nihonminami Ichome
Minami-ku Hiroshima-shi 734-0027 Hiroshima  JAPAN
Date and Place of birth = 1977/07/29, Hiroshima Prefecture
Citizenship status = Japanese Nationality, Male

Optional = This situation relate the terrorism special measures law and
the U.S.-Japan Security Treaty. (I guess it.)  I am used for the security
by wireless. It becomes the sending source of the electrical-communication
which I of old =. landowner's posterity adjusted to the brain waves
which used the satellite for which it is possible to specify an individual.
There is a fact which is accomplished for me and my family to be able
to hear the word of the heart of the immigrant in Japan.
I guess that the North Korean immigrant peoples; persecute affecting
to do the security by wireless with Japan-U.S. . (in Japan)
I hope to request arrangement.

Sincerely,

Name _____ Kouichi Nakamura

Statement swearing under threat of perjury that above
information is true  or have the letter notarized.

(I request the acknowledgement of receipt. because I'm taken the
communication means by the Defense Agency.)

EXHIBIT
A

Mr. Kouichi Nakamura                                    **JAN 17** 2007
26-13, Nihominami Ichome
Minami-ku Hiroshima-shi
734-0027 Hiroshima
JAPAN

Reference:  F-2007-00546

Dear Mr. Nakamura:

   This is a final response to your 8 January 2007 Freedom of Information Act (FOIA)
and Privacy Act (PA) request for information about yourself.

   Regarding those portions of your request relating to the terrorism special measures
law and the U.S.-Japan Security Treaty, we suggest that you contact the Department of
State for further assistance.  The address for the Department of State is:

Ms. Margaret P. Grafeld, Director
Office of Information Programs and Services, SA-2
Department of State
5th Floor
Washington, D.C.  20522-6001

   With respect to that portion of your request for information concerning yourself, in
accordance with section 3.6(a) of Executive Order 12958, as amended, the CIA can neither
confirm nor deny the existence or nonexistence of records responsive to your request.  The
fact of the existence or nonexistence of requested records is properly classified and is
intelligence sources and methods information that is protected from disclosure by section 6
of the CIA Act of 1949, as amended.  Therefore, the Agency has denied your request
pursuant to FOIA exemptions (b)(1) and (b)(3).  I have enclosed an explanation of these
exemptions for your reference and retention.

   CIA Information and Privacy Coordinator Scott Koch made this decision, which
you may appeal to the Agency Release Panel, in my care, within 45 days from the date of
this letter.  You may include any additional information supporting your position or
explaining why you think our initial decision is wrong.

Sincerely,

Scott Koch
Information and Privacy Coordinator

Enclosure

**EXHIBIT**
_B_

Information and Privacy Coordinator

Central Intelligence Agency          Date = 2007.03.23

Scott Koch, Esq.

Washington, D.C. 20505

Dear Coordinator = Please reply the following questions. I received the administrative decision by CIA in Jan 17 2007. The decision is that the CIA can neither confirm nor deny the existence or nonexistence of records responsive to my request. (Reference = F-2007-00546)

When I request to the Japanese Ministry of Defense in Dec 2006, I received the nondisclosure-decision by the Ministry. In Japanese government decision, Japanese Ministry of Defense explained to me that I can take objection to the Japanese Ministry of Defense under the statute S. 37. - "Issue 160 of the Constitution"

"If I start a suit to stop this administrative decision, I have to bring a suit against the Minister of Justice as representative of nation." (In case of Japan)

Above statements was explained to me by government notice. Please teach me whom to elect as defendant in U.S.A.

Please teach me the executive position for defendant. I request well.
                                             Sincerely,

Full Name = Kouichi Nakamura

Address = 26-13, Nihominami 1 chome Minami-ku Hiroshima-shi 734-0027 Hiroshima    JAPAN

FAX = 81-082-284-1347    E-mail = nkmr_082@yahoo.co.jp

post script :

When are you able to send me the Vaughn Index that I am demanding at present? Please send it to me as soon as possible.

I request well.

EXHIBIT
C

28 March 2007

Mr. Kouichi Nakamura
26-13, Nihominami Ichome
Minami-ku Hiroshima-shi
734-0027 Hiroshima
JAPAN

Reference: F-2007-00546

Dear Mr. Nakamura:

We received your 23 March 2007 letter appealing our 17 January 2007 response to your Freedom of Information Act and Privacy Act request for information on yourself.

Appeal rights for F-2007-00546 expired on 3 March 2007. We therefore cannot accept your appeal under the rules outlined in Part 1900 of Title 32 of the Code of Federal Regulations, Section 1900.42(b). I have enclosed a highlighted copy for your reference and retention, and trust that you will understand the equitable and legal reasons for our decision.

Sincerely,

Scott Koch
Information and Privacy Coordinator

Enclosure

EXHIBIT



F- 2007-00000
01111

2007 APR -6 AM 9: 57

Date) 2007/04/06

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D. C. 20505

Dear Coordinator: Under the Freedom of Information Act, 5 U.S.C.
subsection 552 and the Privacy Act, 5 U.S.C. section 552a, please
furnish me with copies of all records (the Agency does not require
you to specify the record system) about me indexed to my name.

To help identify information about me in your record systems, I am
providing the following required information:
Full name = Kouichi Nakamura / Current adress = 26-13, Nihonminami-1chome
Minami-ku  Hiroshima-shi 734-0027 Hiroshima   JAPAN
Date and Place of birth = 1977/07/29, Hiroshima Prefecture
Citizenship status = Japanese Nationality. Male

Optional = This situation relate the terrorism special measures law and
the U.S.-Japan Security Treaty. (I guess it.)  I am used for the security
by wireless.  It becomes the sending source of the electrical-communication
which I of old  landowner's posterity adjusted to the brain waves
which used the satellite for which it is possible to specify an individual.
There is a fact which is accomplished for me and my family to be able
to hear the word of the heart of the immigrant in Japan.
I guess that the North Korean immigrant peoples; persecute: affecting
to do the security by wireless with Japan-U.S. . (in Japan)
I hope to request arrangement.

Sincerely,

Name,       Kouichi Nakamura

Statement swearing under threat of perjury that above
information is true  or have the letter notarized.

(I request the acknowledgement of receipt, because I'm taken the
communication means by the Defense Agency.)

**EXHIBIT**

E

Mr. Kouichi Nakamura                                              APR 1 2 2007
26-13, Nihominami Ichome
Minami-ku Hiroshima-shi
734-0027 Hiroshima
JAPAN

Reference: F-2007-01111 (reference: F-2007-00546)

Dear Mr. Nakamura:

      This is a final response to your 6 April 2007 Freedom of Information Act (FOIA)
and Privacy Act (PA) request for information about yourself. Our records indicate that we
already provided a response to your previous request for the same information under our
reference number F-2007-00546. For your convenience, enclosed is a copy of our
17 January 2007 response.

                                        Sincerely,

                                        Scott Koch
                        Information and Privacy Coordinator

Enclosure

EXHIBIT
F

F-07-01172

Date) 2007/04/## 18

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D. C. 20505

Dear Coordinator: Under the Freedom of Information Act, 5 U.S.C.
subsection 552 and the Privacy Act, 5 U.S.C. section 552a, please
furnish me with copies of all records (the Agency does not require
you to specify the record system) about me indexed to my name.

To help identify information about me in your record systems, I am
providing the following required information:
Full name = Kouichi Nakamura / Current adress = 26-13, Nihominami-1chome
Minami-ku Hiroshima-shi 734-0027 Hiroshima JAPAN.
Date and Place of birth = 1977/07/29, Hiroshima Prefecture
Citizenship status = Japanese Nationality, Male.

Optional = This situation relate the terrorism special measures law and
the U.S.-Japan Security Treaty. (I guess it.) I am used for the security
by wireless. It becomes the sending source of the electrical-communication
which I of old :: landowner's posterity adjusted to the brain waves
which used the satellite for which it is possible to specify an individual.
There is a fact which is accomplished for me and my family to be able
to hear the word of the heart of the immigrant in Japan.
I guess that the North Korean immigrant peoples persecute affecting
to do the security by wireless with Japan-U.S. (in Japan)
I hope to request arrangement.

Sincerely,

Name　　　Kouichi Nakamura

Statement swearing under threat of perjury that above
information is true or have the letter notarized.

( I request the acknowledgement of receipt, because I'm taken the
communication means by the Defense Agency. )( For correction of date)

EXHIBIT
G

MAY 0 9 2007

Mr. Kouichi Nakamura
26-13, Nihominami-I chome
Minami-ku Hiroshima-shi
734-0027 Hiroshima
JAPAN

Reference: F-2007-01172 (reference: F-2007-00546 and F-2007-01111)

Dear Mr. Nakamura:

This is a final response to your 18 April 2007 Freedom of Information Act (FOIA) and Privacy Act (PA) request for information about yourself. Our records indicate that we already provided a response to your previous request for the same information under reference number F-2007-00546. We provided a second copy of that response to you under F-2007-01111. We do not intend to correspond with you further on this matter.

Sincerely,

Scott Koch
Information and Privacy Coordinator

EXHIBIT

_H_

Date) 2007 / 12 / 7

1 / 2

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505
            The statement for objection
Dear Mr. Scott Koch : I was given the number to the
        notice of CIA for reference. (Reference = F-2007-
-00546 )   CIA took the decision of denial for me.
I raise  the statement for objection to CIA.
Time limit on deadline for this appeal went by.
Please, judge at CIA Information  Review Committee
and the Agency Release Panel.
Please give me the notification of decision that was
taken at governmental organization  and at
organization of judgement.

I include any additional information supporting my
position and explaining why I think your initial decision
is wrong. And I appeal to the Agency Release Panel
against the decision of Coordinator.    :

My psychology of response to the psychology of others hung
over the European official and the immigrant people in
Italy, the Netherlands, France on February 2006.
I requested the administrative document and individual
information to Director General of Defense Agency,
the Minister of Foreign Affairs in 2006.
But the administrative organization of Japan made
the reply of the nonexistence to my requests then.
I can't bear psychologically and physically further-
-more.

Because my situation is concerned the lives of my family
in peril. For above-mentioned matter, I think that
the circumstance of mine correspond to the compelling need.

**EXHIBIT**

I

No.
2/2

(The details of dangerous matter)
I am used for the security by the wireless. Because of
the system of electromagnetic wave technology, the
communicative parties caused the following cases.
1. I think that communicative parties made my father
attempt to kill himself. He sustained injuries. As
concrete detail, he suffered external wounds on the
chest by the use of the knife. He suffered three gashes
on his chest around July 2005.
2. My mother was struke (hit) on her head by electromagne-
-tic wave of the Amplifier Generator that neighborhood
immigrants have. She had an accident in the night on
January 14, 2007.
Then she fainted at the toilet. She threw up. And she
could not speak properly and well for disability at one
time.


Above-mentioned two statements are facts. I think
that their immigrants are from North Korea. ( or from
North Korea and South Korea )
I conjecture that the neighbors are the command of
North Korea.
Most of the neighborhood seem immigrants to me. At present,
I conjecture that their acts concern the activities of
Central Intelligence Agency deeply.


To help identify information about me in your record systems, I am
providing the following required information:
Full Name = Kouichi / Current address = 26-13, Nihominami - Ichome
Minami-ku Hiroshima-shi 734-0027 Hiroshima Prefecture
Citizenship status = Japanese Nationality, Male
      Sincerely,

      Name    Kouichi Nakamura

12 December 2007

Mr. Kouichi Nakamura
26-13 Nihominami-Ichome
Minami-ku Hiroshima-shi
734-0027 Hiroshima
JAPAN

Reference: F-2007-00546

Dear Mr. Nakamura:

We received your 7 December 2007 letter appealing our 17 January 2007 response to your Freedom of Information Act request for information on yourself.

Appeal rights for F-2007-00546 expired on 3 March 2007. Therefore, under the rules outlined in part 1900 of title 32 of the Code of Federal Regulations, we are unable to accept your appeal. I have enclosed a highlighted copy for your reference and retention, and trust that you understand the equitable and legal reasons for our decision.

Sincerely,

*for* Scott Koch
Information and Privacy Coordinator

EXHIBIT
J